UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS UNIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 17CV2397 HEA |
| | ) |
| MICHAEL TODD RICE, M.D. and | ) |
| MANDY RICE, D.O., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order [Doc. No. 4]. A hearing on the motion was held on September 14, 2017, at which counsel for the parties appeared. For the following reasons, the motion will be denied.

## BACKGROUND

Plaintiff filed this action alleging dilution of its trademarks and service marks under 15 U.S.C. § 1125(c) and Mo.Rev.Stat. § 417.061, cyberpiracy under 15 U.S.C. § 1125(d), and misuse of a benevolent society's name under Mo.Rev. Stat. § 417.150.1.

Plaintiff's Complaint alleges the following[1]:

---

[1] The recitation of facts is set forth for the purposes of this Opinion only and in no way relieves the parties of the necessary proof thereof.

Plaintiff ("SLU") is an institution of higher education of longstanding duration in St. Louis, Missouri. It is highly regarded by persons and businesses throughout St. Louis, has thousands of alumni, and it enjoys an exceptional reputation both locally and nationally.

As an educational institution and a brand, SLU has become highly recognizable, particularly in the United States by its name of incorporation (St. Louis University, in use since 1832), its brand name (Saint Louis University, in use since 1832) and its official abbreviated name (SLU, in use since 1950). Several of its marks are registered in the United States Patent and Trademark Office ("USPTO"), including SAINT LOUIS UNIVERSITY (No. 1,729,449, issued November 3, 1992) and SLU (No. 1,731,196, issued November 10, 1992), for use in connection with educational services (among other goods and services as well).

For many decades, SLU has been using the ST. LOUIS UNIVERSITY, SAINT LOUIS UNIVERSITY and SLU names and marks (collectively, the "SLU Marks" or the "Marks") in the marketing and promotion of its educational services, including on its website, including the homepage (www.slu.edu).

Among other things, SLU's website devotes multiple pages to its Office of University Compliance (https://www.slu.edu/general-counsel-home/compliance), which is responsible for University policies and regulatory compliance.

SLU offers undergraduate, graduate, and professional programs, including a doctoral medicine (M.D.) program at St. Louis University School of Medicine (the "School of Medicine"). In addition to training future physicians in its four-year M.D. degree program, the School of Medicine also sponsors postgraduate and residency programs for medical school graduates. All of the School of Medicine's residency programs are approved and accredited by the Accreditation Council for Graduate Medical Education. SLU owns a registration for the mark SLUCARE, issued by the USPTO on February 18, 1997, for use in connection with the provision of medical care.

Defendant Mandy Rice, D.O., is a resident in the surgery program at the School of Medicine. She is also the plaintiff in a civil lawsuit filed in St. Louis City Circuit Court arising out of the decision of her program's leadership that Mandy would have to repeat the fourth year of her surgical residency rather than being promoted to her fifth year of residency with the rest of her class, in which she seeks damages in excess of $25,000 against SLU.

Shortly after Defendant Mandy Rice filed her lawsuit, SLU learned of the existence of a website titled "St. Louis University School of Medicine Compliance Project (SLUCP)" at slucomplianceproject.org ("Website"). Plaintiff alleges that the Website uses the SLU Marks extensively, including in its domain name along with non-identifying terminology, in an apparent attempt to confuse internet users

who may be searching for SLU or its Office of University Compliance and to draw their attention away from SLU's educational services and provision of medical care to the issues of Mandy Rice's lawsuit and the Website authors' own "educational" services regarding a competing opinion on "compliance," all for Mandy Rice's personal gain.

SLU also learned of a Facebook page named "St. Louis University Compliance Project (SLUCP)," which can be found at [www.facebook.com](www.facebook.com)/ slucomplianceproject, and which also allegedly uses the SLU Marks extensively, including in the page ID ("Facebook Page") and also appears to be an attempt to "educate" persons searching the Internet for SLU or its Office of University Compliance as to the authors' own views as opposed to the educational services and/or provision of medical care offered by SLU.

Plaintiff believes the Website and Facebook Page are operated by Defendant Michael Todd Rice, with content supplied by or assistance from his wife, Defendant Mandy Rice.

On September 6, 2017, SLU contacted Defendants, through their counsel, and requested that Defendants cease using the acronym SLUCP (and any other acronym using SLU's trademarks), cease use of the SLU Marks in any domain name or name of any Facebook page, and additionally disclaim affiliation, sponsorship or approval by SLU of any criticism or commentary they wished to

post publicly about SLU or Dr. Mandy Rice's lawsuit proceedings such that Internet users would not be so confused and misled. Defendants refused to comply with SLU's requests.

Count I is brought as a claim for Cyberpiracy in violation of 15 U.S.C. § 1125(d)). This Count claims that Defendants intended to divert consumers and the public from SLU's website to "St. Louis University Medical School Compliance Project (SLUCP)" in order to harm the goodwill represented by the SLU Marks and tarnish or disparage the Marks by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their website.

Further, Plaintiff claims Defendants have a bad faith intent to profit from the SLU Marks insofar as their website and Facebook page are an attempt to influence and affect the outcome of Mandy Rice's lawsuit for her personal gain, including tainting potential jurors who may decide Mandy Rice's pending lawsuit against SLU and for settlement leverage as opposed to true criticism and commentary which might otherwise be protected.

Count II is brought as a Dilution Claim in Violation of Missouri Revised Statute § 417.061. It alleges that SLU owns and enjoys common law rights in Missouri to the SLU Marks that are superior to any rights Defendants may claim with respect to their website or Facebook page.

Count II alleges that Defendants' unauthorized and deceptive use of the SLU Marks blurs and erodes the public's exclusive identification of the Marks with the University and tarnishes the positive associations of the SLU Marks.

Plaintiff further contends that Defendants' unauthorized and deceptive use of the SLU Marks are likely to cause injury to SLU's business reputation and dilute the distinctiveness of the SLU Marks unless the Court enjoins Defendants' unlawful activity.

Count III is a Dilution claim alleging a Violation of 15 U.S.C. § 1125(c)). It alleges that the SLU Marks have become sufficiently well recognized by the general public to be deemed famous marks within the meaning of 15 U.S.C. § 1125(c)(2)(A). Defendants' alleged unauthorized and deceptive use of the SLU Marks in commerce has caused damage to the Marks' reputation, and will continue to cause harm if the Court does not enjoin Defendants' unlawful activity.

Count IV is a claim alleging Misuse of a Benevolent Society's Name in Violation of Missouri Revised Statute § 417.150). In support of the Claim, Plaintiff alleges that SLU was formed as a Missouri benevolent corporation under the laws of the State of Missouri on December 28, 1832. SLU has continuously used the name St. Louis University since its formation in 1832.

Around July or August of 2017, Defendants launched a website, slucomplianceproject.org, for "St. Louis University Medical School Compliance

Project (SLUCP)" and Facebook page https://www.facebook.com/slucomplianceproject for "St. Louis University Compliance Project (SLUCP)."

Plaintiff urges that Defendants' use of the names "St. Louis University Medical School Compliance Project (SLUCP)" and "St. Louis University Compliance Project (SLUCP)" so resemble the name of St. Louis University as to be a colorable imitation thereof in violation of Section 417.150.1 of the Missouri Revised Statutes and all relief authorized thereunder shall be granted.

## DISCUSSION

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits; and (4) the public interest. *Grasso Enters, LLC v. Express Scripts, Inc.,* 809 F.3d 1033, 1036 n.2 (8th Cir. 2016)(quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**Irreparable Harm to Plaintiff Absent a Temporary Restraining Order**

"[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013).

Plaintiff argues in support of its claim of irreparable harm that a Google search for SLU compliance project, Defendants' website shows up first in the results list. Speculative harm, however, is not sufficient to establish irreparable harm. Plaintiff has presented no evidence that any actual internet users were confused or believed that Defendants' website was a website of Plaintiff. Indeed, when on the first page of Defendants' website, the site now contains a disclaimer in the top portion that it is not affiliated with Plaintiff. The bottom of the page contains the following disclaimer and notice:

> *Disclaimer: We are in no way associated with or supported by any educational, administrative, accreditation, licensing or oversight body mentioned in these pages. In fact, we're certain they all wish we'd just go away.
>
> *Legal: Institutional images and names are used non-commercially and under concepts of fair use, public domain, sharing of newsworthy and public-benefitting criticism, and with an unlikelihood of confusion as to trademark usage. Legal correspondence will be gladly shared broadly here and on social media.

Although Plaintiff has argued that Defendants are using the website to gain an advantage in Mandy Rice's lawsuit against Plaintiff, Defendants have submitted Michael Rice's affidavit that Mandy was not involved in the creation of the

website and Michael Rice is using the website to present his opinions and beliefs with respect to SLU's compliance. Nowhere does Plaintiff controvert theses affidavits, nor does it present any evidence of a bad faith motive to pressure SLU *vis a vis* Mandy's lawsuit against SLU.

Defendants clearly intended to avoid claims of misuse and confusion by setting out that their website is *not* SLU's website. Defendants have included a notice that the site is in actuality, a site intended to criticize Plaintiff. Included in this notice is a link to the official SLU compliance department. Likewise, Defendants' Facebook page contains similar disclaimers.

Although Defendants' website has "St. Louis University" and "SLU" in its name, the website itself contains no distinctive other St. Louis University logos, such as the use of the colors blue and white the Billikin mascot. Plaintiff has not presented any concrete evidence of irreparable harm.

**Likelihood of Success on the Merits**

Defendants do not dispute that SLU's mark is distinctive or famous at the time Defendant's Domain Name was registered. The SLU mark, as a registered mark, is likely entitled to a rebuttable presumption that it is distinctive. *E.g., Faegre & Benson, LLP v. Purdy*, 447 F. Supp. 2d 1008, 1012 (D. Minn. 2006) (citing *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994)). Defendants have not rebutted this presumption, and the Court sees no reason not to

apply it here. Accordingly, because the SLU mark was registered long before the Domain Names were registered, it was likely distinctive at the time the Domain Names were registered.

The Court must, however, consider whether there was bad faith intent to profit from the marks. ACPA provides a list of non-exclusive factors for courts to consider in determining whether there is bad faith intent. 15 U.S.C. § 1125(d)(1)(B)(i). "The first four factors have been seen as reasons why a defendant might in good faith have registered a domain name incorporating someone else's mark, and the other five are indicia of bad faith intent." *Coca-Cola Co.*, 382 F.3d at 785.

Defendants have taken several steps to establish that their use falls under the fourth factor—"the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name," 15 U.S.C. § 1125(d)(1)(B)(i)(IV). Defendants argue that the "SLU Compliance Project" site was a criticism or "gripe site," which may be considered a noncommercial, fair use of SLU's marks. *See* L*eMond v. Stinchfield*, No. CV 17-2071 (JRT/TNL), 2017 WL 3491837, at *3–8 (D. Minn. Aug. 14, 2017); *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1265 (D. Colo. 2009).

At this stage of the proceedings, it appears that Defendants use is encompassed within the "fair use" exception and as such, the Court cannot find, for

the purposes of this temporary restraining order motion that Plaintiff is likely to succeed on the merits of its claims.

**Balance of the Harms**

Defendants have argued, and their website contains a notice of same, that they are expressing their views and opposition to the way SLU operates. Plaintiff has not controverted this affidavit with any evidence that SLU has experienced any harm from Defendant's website. Ordering Defendants to cease expressing their opinions in the website has serious First Amendment implications that outweigh Plaintiff's speculative harm

**Public Interest**

The Court finds that the public interest favors Defendants. No evidence has been produced that Plaintiff has suffered any actual harm through confusion, dilution or mistake regarding the subject website. There appears to be no risk of public deception and broader public interests implicated by Defendants' website, as opposed to one which attempts to actually *be* valid trademarked site. *See **Coca-Cola Co.**, **382 F.3d at 789-90*** ("The danger of consumer deception warrants some regulation of trademark usage and the public interest in free expression is adequately protected by leaving open ample alternative avenues of communication." (internal citation omitted)). In this instance, the alternative

avenue is a separate website which notifies its readers that it is specifically *not* the entity being criticized.

## CONCLUSION

Based upon the foregoing analysis, the Court concludes a temporary restraining order is not appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order [Doc. No. 4] is **DENIED**.

Dated this 22nd day of September, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE